# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**RONALD LINDSEY,**

      **Plaintiff,**             Civil Action No. 2:16-cv-00111

      v.                          District Judge William L. Campbell

**COMMISSIONER OF**           Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald Lindsey seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court is Plaintiff's Motion for Judgment on the Administrative Record (docket no. 16). Defendant filed a response opposing Plaintiff's motion (docket no. 19). This matter has been referred to the Magistrate Judge for a Report and Recommendation on disposition of Plaintiff's Complaint for judicial review of the decision of the Social Security Administration. (Docket no. 11.) Pursuant to Administrative Order No. 24 entered on January 23, 2018, the undersigned is authorized to hold court and perform other judicial duties in the Middle District of Tennessee under 28 U.S.C. § 636, subsections (a), (b), and (c).

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that the Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (docket no. 16); **AFFIRM** the Commissioner's final decision; and **DISMISS** Plaintiff's complaint.

## II. PROCEDURAL HISTORY

On August 5, 2013, Plaintiff applied for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income ("SSI"), alleging that he has been disabled since January 1, 2009. (TR 11.) The Social Security Administration initially denied Plaintiff's claims on November 14, 2013. (*Id*.) On August 25, 2015, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Todd Spangler. (TR 27-53.) During the hearing, Plaintiff amended his alleged onset date from January 1, 2009 to December 31, 2011. (TR 11.) On October 14, 2015, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 11-20.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on October 18, 2016. (TR 1-3.) On December 20, 2016, Plaintiff commenced this action for judicial review, and subsequently filed a motion for judgment on the administrative record, which is currently before the Court. (Docket no. 16.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 17, pp. 1-10.) In addition, the ALJ summarized Plaintiff's medical record (TR 14-18), and Defendant deferred to the ALJ's summary (docket no. 19, p. 3). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 and had not engaged in substantial gainful activity since December 31, 2011, the alleged onset date. (TR 13.) In addition, the ALJ found that Plaintiff had the following severe impairments: "[d]egenerative disc disease of the cervical spine, status-post Harrington rod for scoliosis, and ischemic heart disease." (TR 14.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 15.) In addition, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), subject to the following limitations:

- Plaintiff can lift ten pounds occasionally and ten pounds frequently;
- Plaintiff can stand, walk and sit six hours in an eight-hour day;
- Plaintiff can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds;
- Plaintiff can perform occasional balancing, stooping, kneeling, crouching, and crawling, with no more than frequent overhead reaching with bilateral extremities;
- Plaintiff should avoid concentrated exposure to extreme cold and heat, and vibration and hazards.

(TR 15.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that Plaintiff is not capable of performing past relevant work, but could perform occupations that exist in significant numbers in the national economy including "surveillance system monitor," "table worker, fabrication," and "hand bander." (TR 19.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time since the alleged onset date. (*Id.*)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

C. Analysis

Plaintiff contends that the ALJ committed three errors. First, Plaintiff asserts that the ALJ erred by giving only "little weight" to the opinion of Dr. Terrence Leveck. (Docket no. 17, p. 12.) Second, Plaintiff submits that the ALJ erred in finding that Plaintiff had no limitations related to fine or gross manipulation despite partial amputation of three fingers on Plaintiff's right hand. (*Id*. at 13.) Finally, Plaintiff contends that the ALJ's evaluation of Plaintiff's credibility is not supported by substantial evidence. (*Id*.) These arguments will be addressed in turn below.

1. *Dr. Leveck's Opinion*

Plaintiff contends that the ALJ's failed to give sufficient weight to the medical opinion of consulting examiner Dr. Terrence Leveck. (Docket no. 17, p. 12.)

As addressed above, the RFC limited Plaintiff to lifting ten pounds, and did not restrict Plaintiff's ability to perform fine motor functions. (TR 15.) In contrast, Dr. Leveck opined that Plaintiff's "fine motor function would probably be somewhat impaired by the decreased range of motion of his cervical spine" and that he could "lift and carry 5 pounds occasionally." (TR 569.) Despite these findings, Dr. Leveck did not assess any limitations on Plaintiff's ability to sit, stand, or walk. (*Id.*)

The ALJ gave only "little weight" to Dr. Leveck's proposed limitations because the opinion "appear[ed] to contain inconsistencies." (TR 17.) In support of that analysis, Defendant submits that "Dr. Leveck did not explain how pain could extremely limit Plaintiff's ability to lift and carry while not limiting his ability to sit, stand, or walk in any way." (Docket no. 19, p. 10.)

This internal inconsistency underscores the general lack of explanation in Dr. Leveck's analysis, which fails to connect the proposed limitations—impairment of fine motor function and

a five-pound lifting restriction—to any objectively observed condition. Moreover, Dr. Leveck's conclusions are inconsistent with other medical records. In particular, on February 27, 2015 Dr. Dawn Barlow recorded that Plaintiff "moved all 4 extremities without difficulty" and that his "strength was 5/5 in all 4 extremities and equal bilaterally." (TR 601.) Similarly, on August 4, 2015 Dr. Chet Gentry observed that Plaintiff displayed normal range of motion in his spine, "[n]ormal symmetry, tone, strength, and [range of motion]" in his musculoskeletal system, and 5/5 strength in his upper and lower extremities bilaterally. (TR 633.) Accordingly, substantial evidence supports the ALJ's decision to give only little weight to Dr. Leveck's analysis.

2. *Amputated Fingers*

Plaintiff asserts that the ALJ erred by concluding that the partial amputation of three fingers on Plaintiff's right hand is not a severe impairment. (Docket no. 17, p. 13.) In this regard, the ALJ observed that "[t]here is amputation of two fingers on the right dominant hand" but concluded that "there is no proof that [this condition] significantly affects [Plaintiff's] ability to do basic fine and gross manipulation." (TR 14.) Plaintiff contends that "[t]he record actually shows that [he] has amputation of three fingers on his right hand" and that this condition limits Plaintiff's ability to perform fine and gross manipulation with that hand. (*Id.*)

As an initial matter, substantial evidence supports the ALJ's determination that only two of Plaintiff's fingers have been amputated. Notwithstanding Dr. Gentry's observation that Plaintiff "had amputation of his 3rd, 4th and 5th fingers at the DIP" (TR 630), Plaintiff's own disability application states that he has "two fingers amputated on [his] dominant hand." (TR 184.)

In addition, substantial evidence supports the ALJ's decision not to modify the RFC based on Plaintiff's partially-amputated fingers. In contending that the ALJ should have

7

imposed limitations regarding fine and gross manipulation, Plaintiff relies primarily on his own testimony that he has difficulty gripping things and will "drop anything he tries to hold for any length of time." (TR 46.) This testimony is inconsistent with the above-cited records of Dr. Bowman and Dr. Gentry, both of whom observed that Plaintiff had "5/5" strength in his upper extremities. In addition, state-agency consultant Dr. Carolyn Parrish opined that "[t]he recent and longitudinal objective findings do not document any significant physical limitations secondary to a partial [right] hand fingers amputation." (TR 63.) The ALJ gave "great weight" to Dr. Parrish's opinion. (TR 17.)

Accordingly, substantial evidence supports the ALJ's decision not to impose limitations regarding fine and gross manipulation due to Plaintiff's partial finger amputations.

### 3. Credibility Determination

Finally, Plaintiff contends that the ALJ erred by "ignoring the record evidence supporting [his] complaints of pain." (Docket no. 17, p. 13.) In particular, Plaintiff asserts that "[i]n making an adverse credibility determination, the ALJ focused on a few points to the exclusion of the thrust of the substantial evidence [in the record]." (*Id.* at 15.)

In his decision, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not entirely credible." (TR 16.) In this regard, the ALJ highlighted the "overall lack of objective evidence to support" Plaintiff's "allegations that he is incapable of all work activity." (TR 18.) As discussed above, the ALJ summarized several medical opinions that conflicted with Plaintiff's statements concerning the limiting effects of his pain. Furthermore, the ALJ noted that "the record reflects work activity after the alleged onset date." (TR 17.) Specifically, Plaintiff has "part-time duties" at the Cokeville Rescue Mission, including "overseeing the safety and welfare of the residents during

8

the evening hours," for which he receives "a housing allowance that includes food, phone, cable and free room and board" as well as a $500 monthly stipend. (TR 278.) Although Plaintiff's employer opined that this position does not involve "strenuous labor," the ALJ observed that Plaintiff's work activity "does indicate that [his] daily activities have at least at times, been somewhat greater than the [he] has generally reported." (TR 17.)

Based on the above discussion, the Court should find that substantial evidence supports the ALJ's credibility determination.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that the Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (docket no. 16); **AFFIRM** the Commissioner's final decision; and **DISMISS** Plaintiff's complaint.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure. Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 12, 2018

**s/ Mona K. Majzoub**
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION